**THRUSH et al. v. LINGO LUMBER CO.**
**(No. 9105.)**

(Court of Civil Appeals of Texas. Dallas.
April 19, 1924. Rehearing Denied
May 31, 1924.)

1. **Municipal corporations** 705(2)—**Statutory duty of drivers of vehicles approaching "intersection" as to turning at required "center of intersection"; "intersect."**

Under Vernon's Ann. Pen. Code Supp. 1922, art 820k, subd. (g), requiring vehicles to keep to the right of the center of an intersection, and, in turning to the left, to run beyond the center, construed in connection with subdivisions (a) and (k), a vehicle intending to turn must approach the intersection on the proper side of the street; "intersection" referring to the space where one street enters into another or the space occupied by two streets at the point where they cross each other, "intersect" meaning either to come into or between, or to cut or cross mutually, the common space, and "center of intersection" referring to point where the center lines of the two streets cross.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Intersect—Intersection.]

2. **Statutes** 205—**Duty of court to adhere to construction carrying out legislative intent, as gathered from entire act.**

Even if Vernon's Ann. Pen. Code Supp. 1922, art. 820k, subd. (g), relative to rules of road at intersection, is susceptible of two constructions, the court is under duty to adhere to that construction which would carry out the legislative intent and purpose as gathered from entire legislative enactment.

3. **Municipal corporations** 706(9)—**General finding of ordinary care by injured driver held properly ignored.**

Where the jury found plaintiff's act of "cutting the corner" in violation of city ordinance and Vernon's Ann. Pen. Code Supp. 1922, art. 820k, subd. (g), was negligence per se and was the direct and proximate cause of the injury, trial court properly ignored the general finding that plaintiff exercised ordinary care, and properly entered judgment for defendant.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Mrs. Lillian Thrush and husband against the Lingo Lumber Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellants.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellee.

VAUGHAN, J. This suit was instituted in the court below by Mrs. Lillian Lynch. Soon thereafter she married J. R. Thrush, and, under agreement of all parties, acting under leave of the court, the original petition was amended by interlineation so as to show that she was prosecuting the suit as Mrs. Lillian Thrush, joined pro forma by her husband, J. R. Thrush, and she will be referred to as appellant throughout this opinion.

Appellant sought to recover damages from the appellee, a private corporation, by reason of a loaded truck belonging to appellee, operated by its agent, colliding with an automobile which appellant was driving upon a paved street in the city of Dallas. She charged that such collision was due to the negligence of the appellee, and alleged that on April 8, 1922, she was driving her automobile westward on and along Jefferson avenue and southerly on and along Crawford street crossing Jefferson avenue, and, while so driving, was struck by said truck. Negligence was predicated in the following manner: (a) That said agent was then and there operating said truck at an unlawful rate of speed, to wit, 35 miles an hour; (b) and was further guilty of negligence in failing to sound any warning or alarm so as to warn appellant of the approach of said truck; (c) that said agent failed to keep a lookout for appellant; (d) that said agent discovered appellant's peril and realized her danger in time; that, had he exercised ordinary care in the use of all the means at hand, he could have stopped said truck or slackened its speed or changed its direction so as to have avoided injuring appellant, and could have avoided same by sounding the horn on said truck, and that, had he done so, appellant could and would have either stopped her car or increased its speed and avoided being struck.

Appellee answered by general denial and general demurrer and a special denial of every allegation of negligence set out in appellant's petition, and further pleaded that at the time, and prior to the date, of the accident there were in force and effect certain city ordinances of the city of Dallas, and that her acts were in violation of said city ordinances and the state law, and constituted negligence per se and were the direct and proximate cause of the injuries received by her. Under the view we take of this appeal it will not be necessary to further notice the pleadings or proof in reference to said city ordinances, further than to say they were properly pleaded and proved.

Appellee further pleaded that appellant was driving her automobile on Jefferson avenue in the city of Dallas, proceeding in a westerly direction, and that prior to the collision was driving in a careless and reckless manner and at a rate of speed of 25 miles per hour, and further pleaded that when she neared the intersection of said Jefferson avenue and Crawford street, and while proceeding at a rapid and unlawful rate of speed, suddenly and without giving any warning, either by sounding her horn or other device, and without giving the prescribed arm signal, said appellant endeavored to

change directions and to leave Jefferson avenue and proceed in a southerly direction on Crawford street, and that she did not slow down; that appellant turned her said automobile sharply to the left and across the car tracks on said Jefferson avenue below and east of the center of the intersection of said streets and negligently and carelessly ran into, upon, and against the lumber truck of the appellee, and pleaded contributory negligence generally on the part of appellant in acting in the manner as alleged by appellee, at the time of receiving the injuries as claimed by her.

The cause was submitted to a jury upon special issues, which resulted in the following findings:

To No. 1, that the driver of appellee's truck ran the same upon the occasion in question at a rate of speed greater than was reasonable and proper, having regard to the traffic and use of the highway.

To No. 2, that such rate of speed proximately caused the injury to appellant.

To No. 3, that the driver of appellee's truck, prior to the collision with appellant's automobile, gave such warning of his approach as would have been given by a person of ordinary prudence.

To No. 5, that the driver of the truck kept such a lookout for appellant as would have been kept by a person of ordinary prudence under the same or similar circumstances.

To No. 9, that the appellant, while driving westward on Jefferson avenue, did not continue on the north side thereof—that is, north of the center of Jefferson avenue—until she had crossed the center of Crawford street before turning to her left to go southward on Crawford street.

To No. 10, that appellant's failure to continue on Jefferson street across the center of Crawford proximately caused, or proximately contributed to cause, the collision in question.

To No. 10a, that appellant on the occasion in question exercised ordinary care for her own safety.

To No. 11, that the driver of the appellee's truck discovered and realized the dangerous and perilous situation of the appellant before the collision.

To No. 12, that, after the driver of appellee's truck discovered and realized the dangerous and perilous situation of the appellant, he could not, by the use of all the means at hand, consistently, with safety to himself and his truck, have avoided injuring the appellant.

To Nos. 14 and 15, that the driver of appellee's truck ran the same in excess of 25 miles an hour, and that the running of said truck at a greater speed than 25 miles per hour proximately caused the appellant to be injured.

The jury assessed the damages of the appellant resulting directly and proximately from the negligence of the appellee at $3,500.

Upon such findings, appellant and appellee filed their respective motions for judgment, hearing on same resulting in judgment being rendered thereon in favor of appellee and against appellant.

The collision between said truck and automobile occurred in the city of Dallas. Appellant was driving her automobile west along the north side of Jefferson avenue. Appellee's truck was being driven east on the south side of the same street. The evidence is in conflict as to whether the collision took place within the intersection of Crawford and Jefferson avenue, or whether it took place at a point east of the east line of Crawford street. This conflict in part arose from the testimony of the appellant to the effect that, before turning to the left or south on Crawford street, she turned to the right and beyond the center of the street intersection, while all the other witnesses, except one, testified that the collision took place before appellant reached the east line of Crawford street and while or just after she was turning diagonally southwest in Jefferson avenue towards the east line of Crawford street. The one excepting witness testified that the collision took place just to the east of the center of Crawford street; that, when appellant was coming into view from the east on Jefferson avenue, it looked like she was going to turn south on Jefferson avenue. No witness testified that she did turn south on Jefferson avenue after reaching the east line of Crawford and before reaching the center thereof.

Crawford street runs north and south, and Jefferson avenue, east and west, and are intersecting streets at the place where the collision occurred. There are two street car tracks on Jefferson avenue, the one located on the north side being used by outgoing cars traveling in a westerly direction, and one on the south side being used by incoming cars traveling in an easterly direction.

The evidence before us is sufficient to sustain the findings made by the jury in response to said special issues. Therefore we do not deem it necessary to specifically find further as to facts established by the evidence, as all of the material facts not reflected by the findings of the jury essential to the disposition of this appeal have been stated.

[1] The several propositions advanced by appellant in her effort to prosecute her appeal with effect not only radiate from, but find their genesis in the construction sought to be placed by appellant on subdivision (g) of article 820k of the Penal Code, Vernon's Texas Civil and Criminal Statutes 1922, which provides:

"All vehicles approaching an intersection of the public highway with the intention of turning thereat, shall, in turning to the right keep to the right of the center of such intersection and in turning to the left, shall run beyond the center of such intersection, passing to the right before turning said vehicle to the left."

Appellant contends that this provision of the statute has no reference to turns which are made in a street before or after crossing an intersecting street, and, in support of this, relies largely upon other provisions of said road law regulating driving between intersecting streets, to wit, subdivision (a), which provides that on all occasions the driver or operator of any vehicle on or upon any public highway in this state shall travel upon the right-hand side of such highway unless the road on the left-hand side of such highway is clear and unobstructed for a distance of at least 50 yards ahead, by which the limited right to drive upon the left-hand side of the street, and, consequently, the right to transfer from the right-hand side to the left-hand side thereof is recognized, and, further, that subdivision (k) thereof impliedly permits the turning of a motor vehicle from the right-hand side to the left-hand side and there make either a right-hand or left-hand turn, provided it is not made at a street intersection.

This subdivision provides that the person in charge of any vehicle in or upon any public highway, before turning, stopping, or changing the course of such vehicle, shall first see that there is sufficient space for such movement to be made in safety, and, if the movement or operation of other vehicles may reasonably be affected by such turning, stopping, or changing of course, shall give certain signs, indicating such intention.

Based upon the provisions of said subdivision (a) and subdivision (k), the proposition is presented by appellant that said subdivision (g) should be construed as having reference to the space occupied by the two streets at the point where they cross each other as "an intersection of the public highway," but should be construed as relating only to the turning at an intersection; that is, within the intersection.

If appellant's contentions in this respect represent the correct interpretation of the application of the provisions of said subdivision (g) of the motor vehicle statute, then the judgment of the court below should be reversed and judgment here rendered in favor of appellant for the amount of damages sustained by her as found by the verdict of the jury; otherwise, said judgment should be affirmed.

The meaning to be given the words, "intersection of the public highway," in their true sense as used in the particular statute under investigation, must be ascertained by a full reference to the context in which they appear. Manley v. Abernathy, 167 N. C. 220, 83 S. E. 343, 344. In the observance of this rule, it will be noted that the Legislature was attempting to provide a code of rules and regulations to be observed by those generally traveling the highway by means of motor propelled vehicles, not only for the safety of life and limb, but, incidentally, for the protection of property. To construe this stat-ute as contended by appellant would necessarily render meaningless the words therein contained, to wit, "approaching an intersection of the public highway," especially the word "intersection" as commonly understood in its general application and use in connection with a public highway.

We have examined a great many authorities bearing on the meaning of the term, "intersecting highway," and have reached the conclusion from the great weight thereof that such term, as used in the statute under investigation governing the operation of motor vehicles, includes a space where one street enters into another, since the term "intersect" is defined as "either to cut into or between, or to cut or cross mutually," and, further, the space occupied by two streets at the point where they cross each other; that is, the space of a street or highway common to both streets or highways. In support of this conclusion we deem it only necessary to cite the following cases without comment thereon: Manley v. Abernathy, supra; Neumann v. Apter, 95 Conn. 695, 112 Atl. 350, 21 A. L. R. 970; Bettilyon v. Smith, 96 Conn. 16, 112 Atl. 649; Price et al. v. City of Lincoln et al., 103 Neb. 366, 171 N. W. 921; Atwood v. Conn. Co., 82 Conn. 539, 74 Atl. 899; City of Crowley v. Police Jury of Acadia Parish, 138 La. 488, 70 South. 487.

It is our opinion that the term "intersection," as therein used, has reference to the space where one street enters into another, or the space occupied by two streets at the point where they cross each other, and that under said subdivision (g) a vehicle approaching such space with the intention of turning thereat is required to approach said intersection on and from the proper side of the street traveled in order to comply with the requirements of said article in making a turn at such intersection. To hold otherwise would be to place that construction on the statute which would practically defeat the purpose for which it was enacted, in that it would, in effect, be to hold that the words, "approaching an intersection with the intention of turning thereat," did not require a vehicle to be on the proper side of the street at the time of approaching said intersection with the intention of turning before a person in charge of a motor vehicle would be required to observe the requirements of said statute. The confusion that would attend an effort to observe such traffic regulation we need not attempt to delineate for, on unbiased reflection, it must be apparent that same would result in bringing about or accentuating the very condition that the enactment of the statute was intended to prevent, to wit, the doing of the very thing of which the jury found appellant guilty, what is known in common parlance as "cutting corners," which appellant would not have done had she observed the requirements of said subdivision (g) in her effort to pass from Jefferson avenue into Crawford street, which would have

required appellant to have continued on the proper side of the avenue under her route of travel until she had passed beyond and to the right of said "center" of such intersection before turning her vehicle to the left.

In this connection we hold that the language "beyond the center of such intersection" has reference to the point where the middle or center lines of the two roads cross. in that it is obvious that the word "center" as used in said act was intended to specifically designate the point where the middle lines of said roads cross as being the center of the intersection of said streets. In re Springfield Road, 73 Pa. 127, 129.

[2] In arriving at this conclusion, we have only given the language of this statute that meaning which renders it harmonious with the purpose of the Legislature in enacting same, rather than to give it that meaning which would defeat such purpose, in this respect observing a well-recognized and generally applied rule of construction to be adhered to in determining the meaning of a legislative enactment. This would be true, even admitting that the statute under investigation was susceptible of two constructions. It would then remain our duty to adhere to that construction which would carry out the legislative intent and purpose as gathered from the entire legislative enactment of which said article constitutes a part. Manley v. Abernathy, supra.

[3] In response to special issues Nos. 9 and 10, the jury found that the acts which were pleaded by appellee as constituting negligence per se and contributory negligence generally on the part of appellant had occurred, and, further, that such acts were the direct and proximate cause of her injury. Therefore the general finding of the jury that appellant on the occasion in question exercised ordinary care for her own safety was without effect, as the jury had found that appellant violated the state statute applicable to and governing her conduct as a traveler on the highway immediately prior to the accident resulting in her injuries, which violation of said statute constituted negligence per se.

As the jury found that the specific acts complained of by appellee constituted negligence per se, and, further, that such acts were the direct and proximate cause of the injuries sustained by her, it was not error for the court to ignore the general finding of the jury that appellant on the occasion in question exercised ordinary care for her own safety, as this was but the expression of an opinion of the jury that, although appellant had violated said state statute, and that such acts proximately caused the injury sustained by her, she otherwise exercised ordinary care for her own safety and protection. Brewster v. City of Forney (Tex. Com. App.) 223 S. W. 175; Ball v. Youngblood (Tex. Civ.

App.) 252 S. W. 872; Zucht v. Brooks et al. (Tex. Civ. App.) 216 S. W. 684.

We are therefore of the opinion that the trial court did not err in rendering judgment for appellee upon said findings, and that said judgment should be in all respects affirmed; and it is so ordered.

Affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes